UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | No. 1:23-cr-330-TNM |
| JEREMY RODGERS, | : | |
| Defendant. | : | |

**GOVERNMENT'S TRIAL BRIEF ADDRESSING**
**SECTION 111(b) AND PROTECTIVE GEAR**

The wooden pole that Defendant Jeremy Rodgers used to strike Officer Brian Adams was a dangerous weapon within the meaning of 18 U.S.C. § 111(b), regardless of Officer Adams's wearing of a helmet.

**LEGAL STANDARD**

As the Parties agree, an object can be a "deadly or dangerous weapon" in one of two ways. ECF No. 81 ("Joint Statement Containing Elements of the Relevant Offenses") at 6. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly; such inherently dangerous weapons include guns, knives, and the like. *Id*.

The second definition is one of the focal points of this case. An object is a deadly or dangerous weapon if the object is "capable of causing serious bodily injury or death to *another person* and the defendant [] use[d] it in that manner." *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002).

"Objects that have perfectly peaceful purposes may be turned into dangerous weapons when used in a manner capable of causing serious bodily injury or death." ECF No. 81 at 6. Other courts agree that almost anything can be a deadly or dangerous weapon if used in a violent fashion. *See, e.g.*, *United States v. Sanchez*, 914 F.2d 1355, 1359 (9th Cir. 1990) (citing cases involving

1

"mop handle" and "mouth and teeth"); *United States v. Loman*, 551 F.2d 164, 169 (7th Cir. 1977) (citing cases involving "a wine bottle," "shoes," "a rake," "a brick," and "a chair leg").

Separately, the government can prove a violation of Section 111(b) without any use of a deadly or dangerous weapon by a defendant. To do so, the government must prove that the defendant caused "bodily injury," including "physical pain . . . no matter how temporary" to the victim. *See* ECF No. 81 at 5-6.

## ARGUMENT

An object does not lose its capacity to cause serious bodily injury in the manner of its use, and therefore cease to be a dangerous weapon, when it is used to attack a victim wearing protective gear. In any event, in this case, the manner in which Rodgers used his wooden pole—used as a blunt force striking instrument against the body of another—was capable of causing serious bodily injury. And Rodgers indeed did cause bodily injury to his victim by causing him physical pain.

**1. The definition of "dangerous weapon" focuses on the use of the object, not the impact on the victim.**

When interpreting Section 111(b), courts have focused on the defendant's use of the object, not on its impact or effect on the victim; "the object's latent capability . . . coupled with the manner of its use, is determinative." *Loman*, 551 F.2d at 169; *see also United States v. Murphy*, 35 F.3d 143, 147 (4th Cir. 1994); *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir.1982) ("The determination whether an object constitutes a 'dangerous weapon' turns not on the object's latent capability alone, but also on the manner in which the object was used."), *cert. denied*, 460 U.S. 1016 (1983).

Section 111(b) does not focus on the susceptibility of the victim to serious bodily injury, but instead on the capability of the weapon to cause serious bodily harm generally. The very specific language from the D.C. Circuit in *Arrington*—that a dangerous weapon "must be capable

of causing serious bodily injury or death to another person"—supports this interpretation. The Circuit did not hold—as it easily could have—that "the object must be capable of causing serious bodily injury or death *to the person it is used against*." Put simply, the definition of dangerous weapon does not require the factfinder to engage in an inquiry about the victim's capacity to avoid serious bodily injury or death; it requires only an inquiry into whether the dangerous weapon could cause serious bodily injury or death generally—to "another person."

Per this Court's request, the government has researched this issue and is not aware of any Circuit cases addressing the effect of protective gear on a Section 111(b) analysis. The government therefore directs the Court to *United States v. Mark Waynick*, in which Judge Kelly refused to consider the protective gear of the officers in determining whether a flagpole was used in a manner capable of causing serious bodily injury or death, stating, "I don't think I take into account what the officers were wearing . . . I think there's plenty of instances where even officers wearing full riot gear, defendants are convicted of assaulting them with a dangerous weapon even with full riot gear on." 23-cr-175 (TJK), Tr. Transcript April 17, 2024 at 21; *contra United States v. Harrington*, 23-cr-298 (JEB), Tr. Transcript, July 31, 2024 at 6 ("I do need to take the fact that the police were wearing riot gear into consideration, so the question is was the pole swung at officers in riot gear capable of causing serious bodily injury."). The Court's holding in *Waynick* makes good sense: shifting focus from the defendant's actions to the victim's relative preparedness would lead to absurd results and undercuts the purpose of Section 111.

2. **Policy concerns militate against reducing the culpability of a defendant who assaults a police victim wearing protective gear.**

As a policy matter, it makes little sense to conclude that a defendant is less culpable if the victim he attacks is wearing protective gear. Such a holding would reduce protections afforded to police officers during dangerous situations, including ongoing riots, and incentivize aggressors to

3

target officers in full protective gear. As Judge Lamberth concluded while granting the government's motion for detention in *United States v. Fairlamb*, "if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." Case No. 1:21-cr-120, 2021 WL 1614821, at *5 (D.D.C. April 26, 2021).

Interpreting Section 111 in a manner inconsistent with that policy would circumvent Congress's reasoning for its enaction: to protect federal officials and *deter* interference with their law enforcement activities. In *United States v. Feola*, the Supreme Court held that "in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer." 420 U.S. 671, 685 (1975). Interpreting Section 111 to embody an unexpressed consideration of the victim's personal vulnerability to attack would likewise run contrary to purpose of Section 111. *See also United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (Section 111 enacted to protect federal officers and federal functions); *United States v. Beckner*, 983 F.2d 1380, 1385 (6th Cir. 1993) (same); *United States v. Jim*, 865 F.2d 211, 214 (9th Cir. 1989) (same).

3. **A victim's wearing of protective gear does not foreclose proof of capability to cause serious bodily injury.**

Police officers can be and are regularly injured in the line of duty while wearing protective gear. Protective gear, such as a helmet, may blunt the impact of a blow, but it does not make that blow incapable of causing serious bodily injury. Body armor and helmets have gaps and other deficiencies, and they may leave areas of the wearer's body as unprotected as an ordinary police uniform. Thus, people wearing helmets (football players, bikers, police officers) suffer head and brain injuries that undeniably rise to the level of serious bodily injury—those involving "a

4

substantial risk of death; extreme physical pain; medical intervention such as surgery, hospitalization, or physical rehabilitation; protracted and obvious disfigurement; or protracted loss or impairment of the function of a bodily member, organ, or mental faculty," ECF No. 85 at 7—on a regular basis.

In this case, the pole that Rodgers used against Officer Adams was capable of causing serious bodily injury, even if Officer Adams was wearing a helmet. The footage shows that Rodgers used a five-foot-long wooden pole as a blunt force instrument to repeatedly strike Officer Adams's head. The government expects Officer Adams to testify that the blows were painful. Indeed, the fact that Rodgers's blows in fact caused bodily injury to Adams despite his protective gear is a strong indication that the manner in which Rodgers used his weapon was capable of going further to cause serious bodily injury.

**4. Rodgers may still be convicted of 18 U.S.C. § 111(b) even if the Court finds that he did not use a dangerous or deadly weapon in his assault.**

Finally, a defendant need not have used a "deadly or dangerous weapon" at all to be convicted under Section 111(b). A defendant may be found guilty under that Section in one of two ways, both of which are charged here. Under Section 111(b), a defendant must have intentionally used a deadly or dangerous weapon *or* inflicted bodily injury.

A defendant may inflict bodily injury without ever using a weapon at all. "Bodily injury," as that term is used in Section 111(b), is a very different term than "serious bodily injury." "Bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement," as well as "physical pain, . . . no matter how temporary." ECF No. 81 at 7.  Here the government expects to elicit testimony from Officer Adams that Rodgers's strikes to his head caused him physical pain. Thus, the Court can find Rodgers guilty of Section 111(b) without regard to his use of a weapon of any kind.

**CONCLUSION**

This Court should find that if an object used in an assault is capable of causing serious bodily injury or death to another person, and is used in that manner, it is a dangerous weapon within the meaning of 18 U.S.C. § 111(b), regardless of whether the victim was wearing protective gear.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                DC Bar No. 481052

By:    */s/ John Oxenreiter*
                JOHN OXENREITER
                Assistant United States Attorney
                New York Bar Reg. No. 5511597
                601 D Street NW
                Washington, DC 20530
                John.Oxenreiter@usdoj.gov

                RACHEL FREEH
                Assistant United States Attorney
                D.C. Bar No. 1736082
                601 D Street, N.W.
                Washington, D.C. 20530
                Rachel.freeh@usdoj.gov